## No. 4815.

JOSEPH RAU, Curator of HENRIETTA HOOKER, v. MOSES KATZ et als.

It is evident that judgment in damages against the civil sheriff for effecting the sale complained of, is erroneous, as he was acting only under the direction of a court of competent jurisdiction and carrying out its orders.

The sheriff seems to have been informed that a suit in interdiction had been instituted against the owner of the property seized, but that was no warrant for him to stop the sale. It did not follow that interdiction would result from the suit. If the parties in interest had desired to stop the sale, they should have injoined it.

APPEAL from the Superior District Court, parish of Orleans. *Hawkins*, J. *J. Fisk*, for plaintiff and appellee. *R. J. Ker, Garrett & Walker, Hays & New*, for defendants and appellants.

MORGAN, J. Henrietta Hooker purchased a certain piece of property in the square bounded by Baronne, Dryades, Seventh and Eighth streets, containing two tenements and outbuildings. The purchase was made on the seventeenth May, 1858. On the tenth October, 1870, she sold, by public act, a portion of this property to Jean Barrere for nine hundred dollars.

On the thirtieth May, 1872, she executed a mortgage on the remaining portion of the property, on which the house is situated, which she occupied as her residence, in favor of Moses Katz for eight hundred and fifty dollars, payable six months from the said thirtieth May, 1872. On the fourth December, 1871, Katz applied to and obtained from the Sixth District Court of this city an order of seizure and sale directed against the property subject to his mortgage. The property was advertised for sale by the sheriff. On the sixteenth January, 1873, Henrietta Hooker alleged that the mortgage under which the executory process issued had been obtained by fraud and without consideration; that she is old, feeble and illiterate, not knowing how to read or write; that being in need she consented that Katz should sell for her the house and lot forming the corner of Seventh and Dryades streets, for $900 in money, a shawl valued at $8, and some domestic valued at $1 50; that after paying her indebtedness a balance remained due to her of $675 ; that when she was called upon to make her mark to the act, which she is now informed is a mortgage, she supposed it was to enable her to draw the proceeds of the property which she had sold. She prayed for an injunction restraining the sale of her property, and asked for judgment against Katz for $675. The injunction issued. A rule was taken to set it aside, and on the thirty-first January, 1873, it was set aside. From this judgment no appeal was taken.

On the tenth February, 1873, the counsel who had represented Henrietta Hooker in the foregoing proceedings, instituted suit in the Second District Court, in the name of Emily Mills, to cause her to be interdicted. She alleged that she was her niece; that she had had the principal care and control over her for four years, and that she is old, infirm, insane and utterly incompetent to manage her own business. Service of this petition having been made upon her, and no answer thereto having been filed, an attorney was appointed to defend her. He filed a general denial. After hearing testimony the judge ordered her interdiction, and, upon the recommendation of a family meeting, Joseph Rau was appointed her curator on March 28, 1873.

In the meanwhile, on the twenty-second March, 1873, the property mortgaged to Katz was sold under execution upon the executory process issued by the Sixth District Court, and Jean Barrere became the purchaser thereof.

This suit is instituted by the curator of Henrietta Hooker against Barrere, Katz and W. P. Harper, sheriff, to annul the sale made by her to Barrere on the tenth October, 1870, and the sale made by the sheriff on the twenty-third March, 1873, in the suit of Katz v. Hooker, at which sale, as we have seen, Barrere became the purchaser, and for damages against them all, which she fixed at $10,000, for having been

forcibly ejected from the last described property. The allegations are that Henrietta Hooker was notoriously insane, and entirely incompetent to transact business when the first sale to Barrere was consummated, and that she had been interdicted, and a copy of the judgment of interdiction had been served upon Katz, before the sale by the sheriff was made; that she received none of the money which was the price of the first sale, and that she was not indebted to Katz in any sum when she executed the mortgage which resulted in the sale of the second piece of property by the sheriff, and that all this was done by Katz and Barrere with the intention of defrauding the insane and interdicted person. He prays also that Barrere be injoined from interfering with her in the possession of the house. Barrere excepted to this proceeding:

*First*—That plaintiff shows no cause of action.

*Second*—That the matters set up for an injunction should have been set up in his proceedings before the Sixth District Court, on the trial of his original injunction before that court.

*Third*—Because the Superior District Court is without jurisdiction to determine upon the validity of judicial proceedings determined upon by another court, and that his remedy is by an action of nullity, to be brought in the court that rendered the judgment which is sought to be annulled.

In so far as relates to the annulling of the sheriff's sale, all the defendants excepted to the jurisdiction of the Superior District Court, *ratione materiæ*, on the ground that it could not annul the sale which was the result of a judgment of the Sixth District Court. Subsequently Jean Barrere answered the petition, in so far as it seeks to annul the sale made to him in October, 1870, filing a general denial thereto.

All the exceptions were overruled on the fifth May, and on the sixteenth of May default was entered against Katz and Harper. No default was taken against Barrere.

Upon these pleadings judgment was rendered in favor of the plaintiff and against all the defendants, perpetuating the injunction, and condemning them to pay $200 damages; annulling the sale made by Harper, sheriff, on the twenty-second March, 1873, and annulling the act of mortgage executed by Henrietta Hooker, in favor of Moses Katz, on the thirtieth May, 1872.

After an ineffectual application for a new trial the defendants have appealed.

The conclusion to which we have come on the merits, renders it unnecessary that we should express any opinion with regard to the exceptions. As regards the sheriff, Harper, it is evident that the judgment

against him is erroneous, as he was acting only under the direction of a court of competent jurisdiction and carrying out its decrees. The allegations in the petition that he acted in defiance of the judgment of interdiction, which had been pronounced against Henrietta Hooker, are not sustained. Nor do we see how this could have been possible, as the judgment of interdiction was not pronounced until two days after the sale was made. The sheriff seems to have been informed that suit was instituted to have her interdicted, but this was no warrant for him to stay the sale. It did not follow that interdiction would result from the suit. If the parties in interest had desired to stop the sale they should have injoined it.

With reference to Barrere there is no evidence in the record to show any complicity between himself and Katz, or that he was party to any scheme which had been concocted for the purpose of defrauding her. In both instances he purchased the property which was offered for sale. In the first case he paid the money to the notary, who gave it to the vendor; and in the second case he purchased at public sale, and paid the price to the sheriff. He is not shown to have had any intimate knowledge of his vendor, and it is not shown that her insanity was notorious at the time the sales were made. Neither do we think the evidence shows that Katz has taken advantage of her situation, or that she was insane.

Neither do we think the evidence shows that Katz has taken advantage of her condition, or that she was insane (if she be so now), at the time the sale and mortgage were executed. She is very old and infirm, and her relatives swear that she is unable to take care of herself, and so does the physician who examined her. But in the executory proceedings she appeared, through her counsel, who now appears for her curator, and acted in her own behalf, and, when examined on the stand, told her story quite as intelligently as did the other witnesses, and failed to satisfy the judge of that court that fraud had been practiced upon her. As to her claim under the homestead law, we can not pass upon it in this proceeding.

It is therefore ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and that there be judgment in favor of the defendants, with costs in both courts.

Rehearing refused.